UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| KRYSTAL PARK, Special Administrator of the Estate of Julie Rae Donscheske, Deceased, | ) ) ) ) | CIV. 09-5050-RHB |
| Plaintiff, | ) ) ) | FILED MAR 25 2010 |
| vs. | ) ) ) | |
| JOHN "JACK" GRAY, individually and as a parole officer of the Department of Corrections of the State of South Dakota; unnamed JOHN DOES, individually and as parole officers of the Department of Corrections of the State of South Dakota; RICHARD MRAZ, individually and as an employee of Fall River County, South Dakota; JEFFREY D. TARRELL, individually and as Sheriff of Fall River County, South Dakota, and unnamed JAMES DOES, individually and as employees of Fall River County, South Dakota, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | ORDER |
| Defendants. | ) | |

**NATURE AND PROCEDURE OF THE CASE**

This action was commenced by Krystal Park (plaintiff) in her capacity as administrator of the estate of Julie Rae Doncheske (Doncheske). The action alleges that, in violation of 42 U.S.C. § 1983, Doncheske's constitutional rights were violated

by John Gray (Gray) and other unnamed parole officers, which will collectively be referred to as "state defendants." Plaintiff also alleges that Doncheske's constitutional rights were violated by Richard Mraz, Jeffrey Tarrell, and other unnamed individuals, all of whom shall be referred hereinafter as "county defendants." Plaintiff also alleges claims of negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress against all defendants.

The complaint was filed on May 27, 2009, and served upon defendants. State defendants filed their answer on June 10, 2009, and an amended answer on June 19, 2009. County defendants filed their answer on June 15, 2009. In their answers, all defendants alleged that they were protected from suit by the doctrine of qualified immunity. Accordingly, the Court issued a scheduling order staying discovery and ordering the parties to file a motion for summary judgment on the issue of immunity. Defendants have complied with the Court's Order and plaintiff has responded. These motions are now ripe for disposition.

## BACKGROUND

Shannon Fast Horse (Fast Horse) was sentenced to serve 24 months incarceration at the South Dakota State Penitentiary on October 14, 2005, for his third offense of driving while under the influence of alcohol. State Defendants' Statement of Material Fact (SDSMF) (Docket #19), 1; County Defendants' Statement

2

of Material Fact (CDSMF) (Docket #23), 1; and Plaintiff's Statement of Material Fact (PSMF) (Docket #32), 1. He was released on parole in March of 2006. SDSMF, 2; CDSMF, 2; PSMF, 2. At the request of Fast Horse and Doncheske, Fast Horse was allowed to reside with Doncheske as a condition of his parole. SDSMF, 4-5; CDSMF, 3-4; PSMF, 8. Defendant John Gray, a parole officer, was assigned to supervise Fast Horse. SDSMF, 3; PSMF, 3.

On July 7, 2006, Gray met with Doncheske and Fast Horse at Doncheske's home. SDSMF, 9-10. Doncheske informed Gray that Fast Horse was exhibiting more anger. SDSMF, 9. Doncheske denied that Fast Horse was being physically abusive or assaultive towards her. SDSMF, 9. When Gray spoke with Fast Horse, Fast Horse admitted to consuming alcohol in violation of his parole. SDSMF, 10. Gray ordered Fast Horse to submit to "breath tests" twice daily at the Fall River County Sheriff's Office. SDSMF, 10.

On July 10, 2006, Doncheske called Gray and informed him that she requested the assistance of the Hot Springs Police Department to remove Fast Horse from her home and that Fast Horse was no longer welcome. SDSMF, 11. Gray's uncontested affidavit reveals that when asked if Fast Horse had been physically violent toward her, Doncheske denied that she had been assaulted. SDSMF, 12. Doncheske also stated that she did not want to see Fast Horse return to prison. SDSMF, 13. Gray

then spoke with Fast Horse and approved a new place of residence for Fast Horse and ordered Fast Horse to have no contact with Doncheske. SDSMF, 15.

That same day, July 10, 2006, Doncheske petitioned for, and was granted, a temporary protection order against Fast Horse. SDSMF, 16; CDSMF, 10-11; PSMF, 13. The petition for the protection order provided as follows:

> **The details of what the person did are as follows (describe what happened):** got angry on my paper route - smashed right leg in door of car, ripped out hair, pushed glasses into face, took hold of hair & repeatedly smashed head into inside of car, kicked, punched, scratched me in numerous places.
>
> **I believe the person will continue to abuse me and that I need a Protection Order to protect me from future abuse. My reasons for believing this are:** since the 4th has repeatedly threatened me, my grown children, my grandchildren, & everyone I am acquainted with - numerous threatening phone calls at home, work, left threatening notes on friends doors, messed with my car, not the 1st incident - just the most recent.
>
> ...
>
> **The immediate and great injury, loss or damage that I believe I will suffer is:** he will find me alone & unprotected & beat me until I die at his hands - Those are his words.
>
> **The reason I need this Order immediately and cannot wait until the scheduled hearing is:** after being removed from my home & told by police to stay away, he has continued the threats & phone calls to my home and work.

Petition and Affidavit for Protection Order, Docket #32-2. County defendants received the protection order on July 11, 2006, and served the order on Fast Horse that same day. CDSMF, 12; PSMF, 6, 14.

4

Tragically, on July 18, 2006, Doncheske was found beaten to death in her backyard. SDSMF, 18; CDSMF, 13. Fast Horse was charged with her murder and pled to manslaughter. CDSMF, 14.

Plaintiff now seeks damages alleging that by failing to arrest Fast Horse for violating his conditions of probation on July 10, 2006, when the protection order was issued, all defendants violated Doncheske's constitutional right to be protected from a parolee.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if the movant can "show that there is no genuine issue as to any material fact and that [the movant] is entitled to judgment as a matter of law." In determining whether summary judgment should issue, the facts and inferences from those facts are viewed in the light most favorable to the nonmoving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348, 1356-57, 89 L. Ed. 2d 538 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists.

In determining whether a genuine issue of material fact exists, the Court views the evidence presented based upon which party has the burden of proof under the underlying substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986). The Supreme Court has instructed that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555, 91 L. Ed. 2d 265 (1986). The nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts," and "[w]here the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 106 S. Ct. at 1356.

## DISCUSSION

### A. Statement of Material Facts

Local Rule 56.1(B) provides as follows,

[a] party opposing a motion for summary judgment shall respond to each numbered paragraph in the moving party's statement of material facts with a separately numbered response and appropriate citations to the record. A party opposing a motion for summary judgment shall identify any material facts as to which it is contended that there exists a genuine material issue to be tried.

D.S.D. L. R. 56.1(B).

In the instant case, plaintiff did not appropriately respond to the statements of material facts submitted by the moving parties, but instead filed a separate statement of material facts to support her brief. As a result, plaintiff is not in compliance with the Local Rules. Local Rule 56.1(D) provides that the effect of omitting a response to the moving party's statement of material fact is that "[a]ll material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's statement of material facts." D.S.D.L.R. 56.1(D).

## B.     Qualified Immunity

Defendants contend that they are immune from suit based on the doctrine of qualified immunity. The United States Supreme Court has held that government agents may be immune from suit if "'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Behrens v. Pelletier, 516 U.S. 299, 306, 116 S. Ct. 834, 838, 133 L. Ed. 2d 773 (1996) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2739, 73 L. Ed. 2d 396 (1982)). "To determine whether an official is entitled to qualified immunity, we ask two questions: (1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional right; and, if so, (2) whether that right was clearly established at the time of the deprivation such that a reasonable official would understand his conduct

was unlawful in the situation he confronted." Vaughn v. Green County, Arkansas, 438 F.3d 845, 850 (8th Cir. 2006) (citations omitted).

Plaintiff alleges that Doncheske's constitutional rights were violated when defendants failed to protect Doncheske by arresting Fast Horse and detaining him pending a revocation of parole hearing after Doncheske was granted a temporary restraining order against Fast Horse. As a result, the Court must determine whether Doncheske had a constitutional right to be protected from by defendants from Fast Horse's actions and, if so, whether that right was clearly established. The United States Supreme Court has held that the courts may determine which of these prongs to address first. See Pearson v. Callahan, ___ U.S. ___, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009).

### 1. Constitutional Right

In 1989, the United States Supreme Court issued its decision in DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989). DeShaney set forth the proposition that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 195, 109 S. Ct. 998, 1003, 103 L. Ed. 2d 249 (1989). As a result, Doncheske did not have a constitutional right under the Fourteenth Amendment to protection by defendants.

There are, however, two exceptions which creates a constitutional right to protection. See DeShaney, 489 U.S. at 200, 109 S. Ct. at 1006; Lee v. Pine Bluff, 4721 F.3d 1026, 1030 (8th Cir. 2007). The Eighth Circuit has held that

> substantive due process requires a state to protect individuals under two theories. First, the state owes a duty to protect those in its custody. Second, the state owes a duty to protect individuals if the state created the danger to which the individuals are subjected.

Avalos v. City of Glenwood, 382 F.3d 792, (8th Cir. 2004) (citations omitted).

Plaintiff urges that a special relationship existed between state defendants and Doncheske. In DeShaney, the Supreme Court stated that "in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals. DeShaney, 489 U.S. at 198, 109 S. Ct. at 1004. However, the Supreme Court held that, "[t]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." Id. at 200, 109 S. Ct. at 1005-1006. There is nothing in the record that demonstrates that there was any limitation placed upon Doncheske by either the state or county defendants. As a result, the Court finds that, under this theory, Doncheske did not have a constitutional right to protection from a parolee. Therefore, in order to demonstrate a violation of a

9

constitutional right, plaintiff must show that the danger faced by Doncheske was state-created.

The Eighth Circuit has held that

> [u]nder the state-created danger theory, the plaintiff[] must prove (1) [Doncheske was a member] of a limited, precisely definable group; (2) that [the state and county defendants'] conduct put [Doncheske] at significant risk of serious, immediate, and proximate harm; (3) the risk was obvious or known to [the state and county defendants]; (4) [the state and county defendants] acted recklessly in conscious disregard of the risk; and (5) in total, [the state and county defendants'] conduct shocks the conscience.

Avalos v. City of Glenwood, 382 F.3d 792, 799 (8th Cir. 2004) (citations omitted).

Having reviewed the record, the Court finds that plaintiff has not set forth facts which would support a state-created danger theory. First, the Court finds that the allegations against both state and county defendants do not rise above the level of negligence. The Eighth Circuit has held that negligence, even gross negligence, "is not actionable... under § 1983." S.S. v. McMullen, 225 F.3d 960, 964 (8th Cir. 2000) (citations omitted). It is unrefuted that Doncheske told Gray that Fast Horse did not physically abuse or assault her. State Defendants' Statement of Material Facts (SDSMF) (Docket #19), 12. Rather, Gray was told that Fast Horse was "no longer welcome to live with her." SDSMF, 11. Gray, upon receiving this information, called Fast Horse and advised him that he was not to have contact with Doncheske and that he would no longer be required to live with her as a condition

10

of parole. DSMF, 15. Furthermore, it is unrefuted that Gray did not know of Doncheske's application for a restraining order against Fast Horse. SDSMF, 19. As a result, state defendants' actions were not in reckless disregard of risk, nor do they shock the conscience.

Likewise, county defendants, upon the issuance of the restraining order, served Fast Horse and informed him he was to have no contact with Doncheske. County Defendants' Statement of Material Facts (CDSMF) (Docket #23), ¶ 12. County defendants were not requested to arrest Fast Horse for allegedly violating his parole. CDSMF, 17; SDSMF, 13,20-21. While there is no dispute that county defendants did not inform state defendants as to the issuance of a temporary protection order against Fast Horse, this lack of action only rises to the level of negligent conduct. For these reasons, therefore, the Court finds that Doncheske did not have a constitutional right to protection by Gray and the other unnamed officers.

2. **Clearly Established**

Even if the Court found that Doncheske did have a constitutional right to protection from a parolee, the doctrine of qualified immunity would apply because that right was not clearly established. "'In determining whether the legal right at issue is clearly established, this circuit applies a flexible standard, requiring some, but not precise factual correspondence with precedent, and demanding that officials apply general, well-developed legal principles.'" Burton v. Richmond, 276 F.3d 973

11

(8th Cir. 2002) (quoting J.H.H. v. O'Hara, 828 F.2d 240, 243 (8th Cir. 1989)). Stated another way, "[t]he law is clearly established if it gives the defendant officials 'fair warning' that their conduct violated an individual's rights when the officials acted." Forrester v. Bass, 397 F.3d 1047, 1054 (8th Cir. 2005).

In 1990, based upon DeShaney, the Eighth Circuit held that, "[i]t is not clear, under *DeShaney*, how large a role the state must play in the creation of danger and in the creation of vulnerability before it assumes a corresponding constitutional duty to protect." Freeman v. Ferguson, 911 F.2d 52, 54 (8th Cir. 1990). Citing this previous holding, the Eighth Circuit in 2005 found in Forrester v. Bass, 397 F.3d 1047 (8th Cir. 2005), that the failure of social workers to properly investigate accusations of child abuse and follow the protective procedures set forth by the State did not meet the requirements for finding a state-created danger. 397 F.3d at 1054. Rather, the Eighth Circuit reasoned that "the state action [taken] was effectively 'the same as if [the state] had done nothing.'" Id. at 1058 (quoting S.S. v. Mullen, 225 F.3d 960, 963 (8th Cir. 2000)).

Shortly thereafter, in June of 2005, the Supreme Court issued its decision in Town of Castle Rock, CO v. Gonzales, 545 U.S. 748, 125 S. Ct. 2796, 162 L. Ed. 2d 658 (2005). In Town of Castle Rock, the respondent claimed she had a property interest in the enforcement of a restraining order and that the failure to enforce that order resulted in a violation of her constitutional rights. 545 U.S. at 755, 125 S. Ct. at 2803.

The Supreme Court noted "[t]he deep-rooted nature of law-enforcement discretion, even in the presence of seemingly mandatory legislative commands. . . ." Id. at 761, 125 S. Ct. at 2806. The Supreme Court then ruled that, despite mandatory language requiring arrest upon violation of a restraining order, that law enforcement was not bound by that legislative edict and therefore, respondent did not have a property interest in its enforcement. Id. at 768, 125 S. Ct. at 2810.

The events which are the subject of this action occurred in July of 2006, approximately one year after the Supreme Court's decision in Town of Castle Rock. As a result, the Court finds that neither the case law of the Supreme Court nor of the Eighth Circuit would have given defendants "'fair warning' that their conduct violated an individual's rights when the officials acted." See Forrester v. Bass, 397 F.3d at 1054. As a result, the Court finds that the doctrine of qualified immunity is applicable and this suit must be dismissed.

## C. Official Capacity Claims Against State Defendants

Plaintiff also asserts claims against Gray and the other unnamed officers in their official capacities as parole officers for the South Dakota Department of Corrections. "A suit against a governmental actor in his official capacity is treated as a suit against the governmental entity itself." Brockinton v. City of Sherwood, Ark., 503 F.3d 667, 674 (8th Cir. 2007) (quoting Hafer v. Melo, 5092 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991)). The United States Supreme Court has held that

13

"neither a State nor its officials acting in there official capacities are 'persons' under § 1983." Will v. Michigan Dept. Of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989). Gray and the unnamed parole officers are therefore not amenable to suit in their official capacities as they are agents of South Dakota. As a result, the Court will dismiss these official capacity claims.

## C.    Official Capacity Claims Against County Defendants

Plaintiff also states claims against county defendants in their official capacities. As stated previously, a suit against an official in his official capacity is the same as suing the governmental entity to which he is employed. See Brockinton, 503 F.3d at 674 (citations omitted). "To establish municipal liability under § 1983, a plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." Moyle v. Anderson, 571 F.3d 814, 817 (8th Cir. 2009) (citing Monell v. N.Y. Dep't of Soc. Servs., 436 U.S. 658, 690-92, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). However, "[a]bsent a constitutional violation, there can be no municipal liability." Cook v. City of Bella Villa, 582 F.3d 840, 853 (8th Cir. 2009) (citations omitted). Having previously determined that Doncheske did not have a constitutional right to protection from a parolee, the Court finds that, accordingly, there can be no municipal liability. As a result, these claims must fail.

## D. State Law Claims

Plaintiff also sets forth claims against defendants under South Dakota state law for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. Defendants claim that they are immune from these claims based upon statutory immunity set forth in SDCL § 3-21-9.

South Dakota Codified Law, section 3-21-9 provides as follows:

> No person, political subdivision, or the state is liable for any injury resulting from the parole or release of a prisoner or from the terms and conditions of his parole or release or from the revocation of his parole or release . . . .

Plaintiff argues that this statute is not applicable as the injury was not a result of parole or the conditions of parole, "but . . . a result of the parole officer not taking the parolee into custody after the parolee had presumably broke[n] the conditions of parole." Plaintiff's Response, p. 13. Plaintiff also cites Arizona caselaw in support of his argument. The Court, however, is not persuaded by plaintiff. Plaintiff's argument that the injury arises out of the failure to revoke the parole is a claim regarding conditions of release. Fast Horse was released under certain conditions. When Doncheske told Gray that she did not wish to have Fast Horse in her home, the conditions of release were modified. Plaintiff is essentially contending that the modified terms of release were unacceptable and that Fast Horse should have been revoked. As a result, this situation falls squarely within the protection of SDCL § 3-21-9, and this suit must be dismissed.

15

### E. Other Motions

Plaintiff also moves to supplement the record with an affidavit of a witness, Diane Greer, who was unavailable at the time the response to the motions for summary judgment were due. The Court will grant that motion and allow the affidavit to become part of the record upon which this matter was decided.

Defendants also move to strike portions of the affidavits of Diane Greer and Andrew Park. Specifically, defendants move to strike paragraphs 3, 4, and 5 from the affidavit of Diane Greer. These paragraphs state:

> 3. After Shannon Fast Horse beat Julie Rae Doncheske up on or about July 4, 2006, and after he had been removed from Julie Rae Doncheske's house, I encouraged her to call Shannon Fast Horse's parole officer to have him picked up. She advised me that she had indeed called the parole officer and reported the abuse to him, and also advised him that Shannon Fast Horse was living in the Jones' home, which had previously been determined to be an unsuitable residence.
> 4. Julie Rae Doncheske also advised me at that time that the parole officer's response to her was that: "It was Julie's word against Shannon's word, and he would do nothing to have him picked up". [sic]
> 5. I have personal knowledge that this occurred prior to her death of July 18, 2006. She attempted to have the parole officer intervene to help her, and he refused to do anything.

Affidavit of Diane Greer, Docket # 36-2.

Similarly, defendants wish to strike paragraphs 11 and 12 of the affidavit of Andrew Park. These paragraphs provide as follows:

16

11. During a phone conversation later that week, I overheard my mother talking with someone, who she later advised me was Mr. Gray. I specifically remember her telling him that she had obtained a protection order against Mr. Fast Horse for the assault that occurred on July 4, 2006. I specifically remember her telling Mr. Gray that she was afraid of Mr. Fast Horse and that he would come and assault her again, and that he would do something about Mr. Fast Horse because of the previous violence, and the fear of future violence, which was the basis for the protection order.

12. I also have a recollection that some time during that week, or around that same time, that my mother indicated that she had contacted Mr. Gray and he had advised that he was not going to do anything in relation to violating Mr. Fast Horse's parole because it was going to be her word against his.

Affidavit of Andrew Park, Docket #35. Defendants contend that these portions of the affidavits contain statements which would be inadmissible at trial. Plaintiff has not responded to this motion.

Federal Rule of Civil Procedure 56(e)(1) provides in pertinent part that, "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." In reviewing the affidavits, the Court finds that the paragraphs which are objected to do contain hearsay statements which would not be admissible at trial. As a result, the Court shall grant defendants' motion to strike. Accordingly, it is hereby

ORDERED that state defendants' motion for summary judgment (Docket #17) is granted.

IT IS FURTHER ORDERED that county defendants' motion for summary judgment (Docket #21) is granted.

IT IS FURTHER ORDERED that plaintiff's motion to supplement the record (Docket #36) is granted.

IT IS FURTHER ORDERED that state defendants' motion to strike (Docket #39) is granted.

Dated this 25th day of March, 2010.

BY THE COURT:

RICHARD H. BATTEY
UNITED STATES DISTRICT JUDGE